**Diane C. BLACK, Appellant,**

v.

**UNIVERSAL SERVICES, INC., and Alaska Pacific Assurance Company, Appellees.**

**No. 4786.**

Supreme Court of Alaska.

May 15, 1981.

As Modified on Denial of Rehearing July 17, 1981.

Franklin D. Fleeks and Frederic E. Brown, Fairbanks, for appellant.

---

14. See note 12 *supra*.

Michael C. Geraghty, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

This is a workers' compensation case. The claimant, Diane Black, was denied continuing compensation by the Alaska Workers' Compensation Board ("Board").[1] That denial was affirmed by the superior court. We reverse.

On February 14, 1976, Black, while employed by Universal Services as a bullcook on the Alaska pipeline suffered a back injury while trying to move a heavy bed. She was flown to Fairbanks, where Dr. Young Ha saw her and advised rest. Although Black stated that this rest produced only "mild improvement," she nevertheless went on a long-planned trip to Greece with some friends. This trip aggravated the back injury and resulted in her confinement to a wheelchair.[2] Upon Black's return to Fairbanks, Dr. Ha refused to see her, claiming that she was malingering. But other doctors did see her and began several types of therapy, none successful.

In the fall of 1976, Black, "just in desperation," went to Seattle for medical treatment. The orthopedics unit of the University of Washington declined surgery, and referred Black to the Pain Clinic. That clinic was able to help her. Dr. Butler of the clinic diagnosed her problem as "myo-

fascial syndrome,"[3] and treated her with injections of a local anaesthetic.[4] According to Black, however, her condition has deteriorated since she discontinued outpatient treatment and left her father's house in Seattle to return to Alaska.[5]

Throughout this period Universal Service's workers' compensation insurance carrier, the Alaska Pacific Assurance company ("ALPAC"), paid Black's medical bills and temporary total disability benefits. In April 1977, ALPAC arranged to have her examined by two San Francisco doctors. One of them, psychiatrist-neurologist Willard Pennell, concluded that Black had fully recovered from her back injury and for psychological reasons was simply "manipulating" those treating her. The other, orthopedic surgeon Elton Welke, found that Black had not fully recovered but that her condition was stationary and permanent. He concluded that "she is probably reasonably to be considered to show disability precluding heavy lifting." Dr. Welke was unable to explain whether or not the pipeline accident caused her condition. Based on these reports, ALPAC terminated Black's temporary total disability benefits in June 1977. Black nevertheless continued to see a Fairbanks doctor on a frequent basis.

On June 24, Black filed an application for adjustment of her claim with the Board. A hearing was held on August 1 at which only Black testified, while ALPAC relied on its medical reports. Three months later the Board denied her application, concluding that "as stated in Dr. Pennell's report, ... it is probable that some secondary gain or need for attention is motivating her to per-

1. Pursuant to ch. 94, § 60, SLA 1980, the Alaska Workmen's Compensation Board has become the Alaska Workers' Compensation Board.

2. Black testified that Dr. Ha assured her that her planned leisurely trip would cause no problems.

3. This condition may occur after acute injury to muscles, bones or joints. Certain areas in muscles or in muscular connective tissue become "trigger areas," which when stimulated may produce pain in parts of the body far removed

from the trigger. *See* Berges, *Myofascial Pain Syndromes*, 53 Postgraduate Medicine 161 (1973).

4. Black's medical records at the University Hospital indicate that the hospital staff was also concerned about her psychological problems, primarily depression. She spent some time in the hospital's psychiatric unit.

5. The record does not indicate why Black returned to Fairbanks.

petuate her symptoms and that she will continue to seek treatment and take medication as long as it is provided." Black appealed the Board's decision to the superior court. In the interim, she sought reconsideration of her claim by the Board. A hearing was held on April 3, 1978, at which Black asserted that the Board had made a mistake of fact in its first ruling and that she had new information from Dr. Butler of the University Hospital concerning the myofascial syndrome. On May 24, the Board denied Black's request to have the case reheard. On reconsideration, the Board concluded that Black's disability was not related to the February 1976 back injury, but rather, as stated by Dr. Pennell, was the result of "some secondary gain or need for attention [which was] motivating her to perpetuate her symptoms."

On June 22, 1979, the superior court entered an order "denying" Black's appeal.[6] The superior court stated that it was "not compelled [by the Board record] to substitute [its] judgment on the facts and say that the Board erred in its evaluation of the evidence and its conclusions." Black has appealed from the superior court's affirmance of the Board's decision.

■ For a reviewing court to uphold a decision of the Board, it must find that the decision is supported by "substantial evidence," i. e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1049 (Alaska 1978). The same standard is used in determining whether the employer has rebutted the statutory presumption of coverage.[7] *Id.* at 1046. This presumption of compensability applies in determining whether an employee's current problems are related to an on-the-job injury or arise from an independent cause. *Alaska Pacific Assurance Co. v. Turner*, 611 P.2d 12, 15 (Alaska 1980); *Rogers Electric Co. v. Kouba*, 603 P.2d 909, 911 (Alaska 1979).

■ Here the Board seems to have relied primarily on the report of Dr. Pennell, the San Francisco psychiatrist-neurologist.[8] The Board's conclusions are very brief:

> We believe, as stated in Dr. Pennell's report, that it is probable that some secondary gain or need for attention is motivating her to perpetuate her symptoms and that she will continue to seek treatment and take medication as long as it is provided.
>
> In summary, we believe that whatever disability she may have at the present time is unrelated to the February 14, 1976, incident. We further believe she has been adequately compensated for the minor back strain she incurred in the course of her employment for the defendant.

Black challenges the propriety of the Board's reliance on that report and claims that Dr. Pennell's knowledge of the case is so slight as to make his report virtually worthless. After reviewing the record, we are unable to accept Dr. Pennell's report as "substantial evidence" in support of the Board's conclusion that Black's then-present disability was unrelated to the February 14, 1976, incident.

Because Dr. Pennell had no opportunity to examine Black in any depth,[9] and because his conclusions are contrary to those of the numerous physicians who treated her, we have concluded that a "reasonable

---

**6.** Although a notice of appeal was timely filed, Black's brief in superior court was not filed until April 30, 1979, almost a year after the Board denied rehearing. The record contains no explanation for this delay.

**7.** AS 23.30.120 provides in part:

> In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that

> (1) the claim comes within the provisions of this chapter; . . .

**8.** We have examined the two opinions of the Board, and cannot accept ALPAC's argument that the Board substantially relied on evidence other than the Pennell report.

**9.** Black testified that the interview lasted only twenty minutes. It is evident from Pennell's report that both the interview and the examination were rather brief.

mind" would not accept his diagnosis.[10] While the judiciary may not reweigh the evidence before the Board, *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1049 (Alaska 1978), neither may it abdicate its reviewing function and affirm a Board decision that has only extremely slight supporting evidence.

Dr. Butler, Black's treating physician at the University of Washington, wrote a letter to ALPAC expressing his opinion that her pains resulted from myofascial syndrome. Nowhere in the letter did he imply that the pains were imaginary or faked, as Dr. Pennell suggested. While it was not explicitly stated, Butler strongly implied that Black's myofascial syndrome was the product of her pipeline accident.[11]

In addition to Butler's report there are physicians' reports from Dr. Welke, Dr. Lindig, and Dr. Klemperer and a plethora of brief "Physician's Supplemental Reports" in the record, most of them signed by Dr. Perry Mead of the Fairbanks Clinic. With the exception of one report, none of these reports released Black for work, and her further work time loss was estimated as "months."[12] Again, none of these reports indicates that Black's pain is fabricated.

We recognize that Dr. Pennell is a psychiatrist and that Drs. Welke, Butler, Lindig, Klemperer, and Mead are not, and hence that Pennell's conclusion that Black's problems are mental might be given more weight than the other doctors' conclusions to the contrary.

Dr. Pennell's report is neither doubtful nor ambiguous. However, because of the weaknesses in Pennell's report described above, we conclude that a reasonable mind would not accept his psychological conclusions as adequate to support the Board's denial of compensation. Thus, Pennell's report does not provide a substantial basis for the Board's denial of Black's claim. The reports of other doctors referred to in the dissent are all inconclusive, either as to the cause or as to the extent of Black's disability. In brief, we are of the opinion that the record does not disclose substantial evidence that appellant's disability is unrelated to the February 14, 1976, incident.

The order of the superior court affirming the decision of the Board is reversed, and the case is remanded to the superior court with instructions to remand to the Board. The Board shall determine the duration of Black's temporary total disability and shall assess her permanent partial disability, if any, if her condition is found to be stable.

REVERSED.

MATTHEWS, J., dissents.

MATTHEWS, Justice, dissenting.

The Workmen's Compensation Board found that "whatever disability [Ms. Black] may have at the present time is unrelated" to the injuries she suffered in February of 1976 while employed by Universal Services. The question for this court is whether that finding is supported by substantial evidence. I believe that it is and would affirm.

Dr. Pennell's report directly supports the Board's conclusion. His diagnosis was that appellant's complaints result from "an hysterical personality disorder of long standing." There are indications in the reports of other physicians who had treated appel-

10. We frankly are troubled by the slender evidentiary basis underlying many of the doctor's conclusions.

11. ALPAC points out that when Butler first saw Black he estimated the duration of her disability as three months. We cannot, however, attach any significance to this estimate. At the time Butler made it he noted that Black's therapy would have to be "prolonged," and that it would be "difficult to predict duration and response." We also observed recently that an initial time estimate may have little validity in light of subsequent events or diagnoses. *Kessick v. Alyeska Pipeline Service Co.*, 617 P.2d 755, 758 (Alaska 1980).

12. In a report dated March 14, 1977, Dr. Butler released Black for work with the stipulation that no lifting, twisting, or bending should be done.

lant that she was suffering a disability caused by the February 1976 accident. No medical testimony, as distinct from reports, was presented. It is not correct to imply that Dr. Pennell's diagnosis was entirely different from the conclusions of all of the other physicians who had treated appellant, for most of them noted that her problem had a strong emotional component.

Appellant has a pre-accident history of severe depression; several episodes resulted in hospitalization. Dr. Butler, the physician whose opinion is most favorable to the appellant, expressed the view that her major problem was her psychiatric state. Appellant's first treating physician, Dr. Young Ha, released appellant for light work as of March 12, 1976. After she returned from her vacation in Greece in April of 1976 he told her she was malingering. Another physician, Dr. Welke, stated that he could not attribute the origin of appellant's pain in the lower back, or the disc space narrowing observable on x-ray, to the February 1976 episode. He also observed that appellant's strange manner of walking did not resemble a pain-caused "antalgic limp." Several other physicians noted instances where appellant seemed to be exaggerating symptoms. A consulting psychologist at the University of Washington Pain Clinic indicated that "depression may have been mislabeled as pain" by her; but this "wouldn't account for all of her pain behavior." The diagnosis of another physician, Dr. Iverson, who saw appellant in October of 1976 was "low back strain complicated by psychophysiological manifestations of depression and paranoia." At the time of the first hearing, August 1, 1977, appellant's counsel stated that her current treating physician, Dr. Mead, was not being called as a witness "because I talked to him on the phone and his opinion is that he really doesn't know what is wrong with her, so all he can do is to treat her symptomatically, that is, treat the symptoms. . . ."

Based on this record, I do not agree that the evidence supporting the Board's conclusion is so tenuous and unpersuasive as to require reversal.