Harold CHILDS, Appellant,

v.

COPPER VALLEY ELECTRIC ASSOCI-
ATION, Scott Wetzel Services, Inc., and
the Alaska Workers' Compensation
Board, Appellees.

No. S–5229.

Supreme Court of Alaska.

Sept. 17, 1993.

William J. Soule, Law Office of William J. Soule, Anchorage, for appellant.

Shelby L. Nuenke–Davison, Davison & Davison, Inc., Anchorage, Atty. for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

*OPINION*

MOORE, Chief Justice.

## I. INTRODUCTION

While working for Copper Valley Electric Association (CVEA), Harold Childs inhaled urethane smoke from a tank farm fire. Claiming that this accident caused a chronic breathing disorder, Childs challenges a decision of the Alaska Workers' Compensation Board (Board) denying him temporary total disability benefits, permanent partial disability benefits, and attorney's fees. He seeks medical benefits that CVEA offered to pay but did not, as well as interest on this sum. He also challenges a superior court finding that CVEA owed a penalty for untimely payment of disability compensation but not for failure to pay medical benefits. We affirm in part and reverse in part.

## II. FACTS AND PROCEEDINGS

In April 1988 four outdoor fuel tanks at CVEA's Glennallen power plant caught fire. During the fire Childs inhaled smoke from burning urethane foam insulation. He was taken to a local medical center, where he complained of pain in his throat and chest when breathing. The medical personnel kept him under observation for a few hours, noting that he had a raspy voice and an occasional dry cough, but that his breathing was unlabored and his lungs were clear. Childs returned to work the next day, and remained at his job until late October.

Nonetheless, Childs continued to complain of chest pains and breathing difficulties, particularly upon exertion or exposure to strong fumes or smoke. Several times in May he returned to the medical center. A spirometry indicated small airway disease, which the doctor linked to the smoke inhalation incident.

Starting in June Childs made regular visits to Dr. Buffington Burtis, a pulmonologist. Dr. Burtis diagnosed Childs's condition as "[u]rethane and diesel smoke bronchitis with bronchoconstriction," with "possible hyperresponsive sensitivity in the respiratory tract developing since the exposure to isocyanate (urethane)."[1] Dr. Burtis did not detect a cough or tenderness in the chest wall, and tests of Childs's pulmonary functions gave normal results.

Childs was again hospitalized in late October, this time for severe chest pains. One test showed moderate duodenitis,[2] but a duodenal biopsy revealed no abnormalities. In his diagnosis Dr. Burtis suspected that the chest pains were linked to duodenitis, but he now denies such a link. Dr. Burtis again found no tenderness in the chest wall, noted that the chest was clear, and observed that Childs was in no apparent distress. Subsequently Childs tried to return to work, but the manager refused to

---

1. "Hyperresponsive sensitivity" is not a recognized medical term, but rather a term that Dr. Burtis created in order to explain Childs's malady.

2. Duodenitis is an inflammation of the intestinal tract close to the stomach.

let him come back until he was "100 percent capable of working there."

In late November Dr. Burtis performed a water nebulization test in order to check Childs's rate of respiratory flow. Dr. Burtis found "a minimal reduction in all expiratory flow rates of questionable significance." He interpreted the test results to show some irritation and bronchoconstriction.

At about the same time, CVEA controverted payment of further workers' compensation benefits to Childs, alleging the absence of a causal relationship between Childs's medical condition and the smoke inhalation episode of April. Subsequently Childs filed an application for adjustment of his claim with the Alaska Workers' Compensation Board.

In February 1989 Dr. Burtis referred Childs to Dr. George Stewart for a second opinion on Childs's condition. Upon examining Childs, Dr. Stewart attributed Childs's symptoms to "diffuse tracheal bronchitis." Dr. Stewart performed a fiberoptic bronchoscopy on Childs.[3] This procedure revealed "significant irritation of the airways."

Meanwhile, Childs reported that his symptoms had intensified. His chest pains and breathing difficulties increased upon exposure to air pollution, vehicle exhaust, cold air, wood smoke, dust, or noxious fumes. By September 1989 these pains were constant and got worse with exertion. Dr. Burtis remains convinced that Childs's malady is linked to the smoke inhalation injury.

CVEA arranged for Dr. Lee Newman to examine Childs in January 1990. Dr. Newman conducted two tests for hyperreactivity in the airways: a methacholine challenge and a histamine challenge. Neither test revealed any cardiac or respiratory abnormalities, and Dr. Newman could find no objective evidence of pulmonary difficulties. Dr. Newman questioned the significance of Dr. Burtis's water nebulization test.

Though Dr. Newman did not totally rule out a link between the smoke inhalation incident and Childs's continued problems, he did not think that such a link was at all likely. He stated that "industrial bronchitis as seen in this gentleman can occur in the absence of any measurable pulmonary function abnormalities." He also stated that at the time of Dr. Stewart's examination Childs probably had bronchitis tied to urethane smoke inhalation. Nonetheless, Dr. Newman concluded that any such bronchitis had dissipated in the time between Dr. Stewart's tests and his own. He roughly estimated May 1989 as the date when Childs's bronchitis finally resolved. Dr. Newman suggested that Childs's chest pains had a nonrespiratory cause such as duodenitis or costochondritis.[4]

In April 1990, after receiving Dr. Newman's report, CVEA told Childs's private insurer that Childs would receive 26 weeks of temporary total disability (TTD) benefits. CVEA also indicated that it would pay Childs's work-related medical bills. The TTD payments were not forthcoming until after Childs's attorney raised the issue at a prehearing conference. In August 1990 CVEA paid TTD benefits for the period from October 1988 through April 1989. As of the date of the Board hearing, CVEA had not paid the promised medical benefits. CVEA has continued to controvert all benefits claimed beyond April 1989.

In September 1990 CVEA had another pulmonologist, Dr. Lawrence Repsher, examine Childs's medical records. Dr. Repsher concluded that Childs "suffered no significant respiratory or other injury as a result of the episode of what was clearly trivial smoke inhalation." Dr. Repsher also stated that Childs displayed no evidence of chronic bronchitis, hyperreactive airways disease, or any other respiratory

---

**3.** A bronchoscopy is a procedure in which the physician passes a tube into the bronchial passages and visually inspects the airways by means of fiberoptic technology.

**4.** Costochondritis is an inflammation of the junction between the ribs and the cartilage on the chest wall.

problem resulting from the smoke inhalation episode.

Though Dr. Repsher never actually examined Childs, he concluded that Dr. Newman's methacholine test showed no evidence of hyperreactive airways or chronic bronchitis. Dr. Repsher discounted the significance of Dr. Burtis's water nebulization test and said that no one uses such a procedure to test pulmonary functions. He also took sharp issue with Dr. Newman's theory that Childs could have a respiratory condition despite objective tests indicating the contrary. Dr. Repsher asserted that Dr. Newman "basically stands alone in that belief and has no medical evidence of any kind to support that position."

The Board conducted a hearing on Childs's claim in October 1990. Childs relied on the testimony of Drs. Burtis and Newman to support his claim. CVEA also relied on Dr. Newman's testimony, and additionally relied on the testimony of Dr. Repsher.

The Board limited the time for witness testimony to the amounts that counsel for the parties estimated before the hearing started. After the testimony of the first few witnesses ran overtime, the Board limited the time for the remaining witness testimony. Objecting that under the time limits he could not present rebuttal evidence, Childs made an offer of proof as to what his rebuttal witnesses would have testified.

The Board found that after April 1989 Childs's condition was no longer related to his smoke inhalation injury. The Board weighed the testimony of Drs. Repsher and Newman more heavily than that of Dr. Burtis, and rejected Childs's assertion that Dr. Newman's testimony supported his claim. In a subsequent hearing, the Board awarded Childs interest on the TTD benefits that CVEA paid in August 1990 for the period from October 1988 through April

1989. However, the Board refused to assess a 20 percent penalty for delayed payment.

The superior court affirmed the Board on all issues except that of the 20 percent penalty. Relying on this court's recent holding in *Harp v. ARCO Alaska, Inc.*, 831 P.2d 352, 357–59 (Alaska 1992), Judge Michalski imposed the penalty for CVEA's delayed payment of the TTD benefits. Judge Michalski refused to impose a penalty on unpaid medical benefits, concluding that medical benefits were not compensation for the purposes of awarding a penalty. Childs appeals.

## III. DISCUSSION

### A. Rebuttal of the Presumption of Compensability

 Childs first argues that CVEA failed to rebut the presumption of compensability set out in AS 23.30.120(a). To reach this conclusion Childs relies on language in *Grainger v. Alaska Workers' Compensation Board*, 805 P.2d 976 (Alaska 1991):

> Once the presumption arises, an employer can overcome it by presenting substantial evidence that either (1) provides an *alternative explanation* which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability.

*Id.* at 977 (emphasis added) (footnote omitted). Childs reads *Grainger* to require that medical experts not only rule out a link between employment and disability but also present an alternative diagnosis. He claims that because CVEA's experts, Drs. Repsher and Newman, offered no alternative explanation for his continued illness, the Board erred in finding that their testimony constituted substantial evidence.[5]

5. Like any other Board decision, a finding that the employer has rebutted the presumption of compensability must be based on substantial evidence. *Veco, Inc. v. Wolfer*, 693 P.2d 865, 869 (Alaska 1985). Substantial evidence is that which a reasonable mind, viewing the record as a whole, might accept as adequate to support

the Board's decision. *Morrison v. Afognak Logging, Inc.*, 768 P.2d 1139, 1141 (Alaska 1989). Once rebutted, the presumption of compensability drops out, and the employee must prove each element of her claim by a preponderance of the evidence. *Wolfer*, 693 P.2d at 870.

■ Childs's reliance on *Grainger* is misplaced. *Grainger* simply restates the rule that an employer may rebut the presumption of compensability "either by presenting affirmative evidence that the injury is not work-connected or by eliminating all possibilities that the injury was work-connected." *Veco, Inc. v. Wolfer*, 693 P.2d 865, 872 (Alaska 1985); *see also Adamson v. University of Alaska*, 819 P.2d 886, 892 n. 9 (Alaska 1991). Accordingly, medical testimony cannot constitute substantial evidence if it simply points to other possible causes of an employee's injury or disability, without ruling out work-related causes. *See Grainger*, 805 P.2d at 977.

■ In this case, the opinions of Drs. Newman and Repsher expressly ruled out the smoke inhalation incident as the cause of Childs's present condition. An employer has always been able to rebut the presumption of compensability with an expert opinion that "the claimant's work was probably not a substantial cause of the disability." *Big K Grocery v. Gibson*, 836 P.2d 941, 942 (Alaska 1992). If medical experts have ruled out work-related causes for an employee's injury, then *Wolfer* and *Grainger* do not require that these experts also offer alternative explanations. Moreover, the fact that Dr. Newman, like many medical professionals, did not state his opinion in absolute terms does not mean that his testimony was inconclusive or that he failed to exclude smoke inhalation as a cause of Childs's condition. *See id.;* 3 Arthur Larson, *The Law of Workmen's Compensation* § 80.32, at 15–834 through –835 (1992) ("The weight of [medical] testimony … should not be too sharply discounted because of the disposition of the highly trained scientific mind to refrain from unqualified statements or opinions on such matters as causation."). Therefore, the Board did not err in finding that CVEA had presented substantial evidence to overcome the presumption of compensability.

We independently review the evidence to ascertain whether the Board properly found that the employer presented substantial evidence to rebut the presumption of compensability. *Id.* at

### B. Substantial Evidence Issues

Next, Childs argues that the Board's decision was not based on substantial evidence. In particular, Childs argues that because Dr. Repsher did not personally examine him, the Board erred in giving substantial weight to the doctor's testimony.

■ When examining a Board determination under the substantial evidence test, we do not reweigh the evidence. *Morrison v. Afognak Logging, Inc.*, 768 P.2d 1139, 1141 (Alaska 1989). If medical experts disagree upon the ultimate cause of an employee's injury, then as a general rule, "it is undeniably the province of the Board and not this court to decide who to believe and who to distrust." *Kessick v. Alyeska Pipeline Serv. Co.*, 617 P.2d 755, 758 (Alaska 1980); *see also Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1048–49 (Alaska 1978). However, in *Black v. Universal Services, Inc.*, 627 P.2d 1073 (Alaska 1981), we held that because a psychiatrist "had no opportunity to examine [the employee] in any depth, and because his conclusions [were] contrary to those of the numerous physicians who treated her," his report therefore did not constitute substantial evidence in support of a Board denial of benefits. *Id.* at 1075 (footnote omitted). We held that the general rule against reweighing the evidence does not permit a court to "abdicate its reviewing function and affirm a Board decision that has only extremely slight supporting evidence." *Id.* at 1076.

■ Childs argues that because Dr. Repsher only examined Childs's medical records, and not Childs himself, the doctor's testimony is analogous to the psychiatrist's report in *Black*. However, Childs's case is distinguishable from *Black*, because Dr. Repsher's opinion does not stand alone. Dr. Newman also concluded that Childs's current condition is unrelated to the smoke inhalation episode. In addition, numerous objective tests indicated no respiratory abnormalities. Therefore, the testimony of Drs. Newman and Repsher constituted sub-

869. Because the presumption shifts only the burden of production and not the burden of persuasion, we examine the evidence tending to rebut the presumption by itself. *Id.*

stantial evidence to support the Board's conclusion that Childs's condition is not work-related, and the Board did not err by weighing this testimony as it did.[6]

## C. Equitable Estoppel

 Childs argues that because CVEA paid some of Childs's initial medical bills and also paid TTD benefits for October 1988–April 1989, principles of equitable estoppel therefore prevent CVEA from denying further liability. Judge Michalski rejected this argument on public policy grounds, concluding that to do otherwise "would encourage every employer to dispute an employee's claim to the fullest extent possible, since any payment of benefits might be seen as a concession of liability." Judge Michalski is correct. *See, e.g., Frasure v. Agripac, Inc.*, 290 Or. 99, 619 P.2d 274, 278–79 (1980); 2B A. Larson, *supra*, § 79.43, at 15–426.107 through .114 (1989).

## D. Due Process Concerns

 Childs contends that the Board's time limits on the presentation of evidence deprived him of due process of law. The Board concluded that Childs had more than enough time to put on his evidence, given that most workers' compensation hearings do not last as long as this one did.

The Board did not expressly deny Childs the right to rebut. The Board simply held both parties to the time that they estimated to be necessary for presenting their cases. The fact that Childs did not budget his time efficiently, so that he ran out of time to present rebuttal testimony, does not amount to the denial of his right to rebut.

Although a claimant has a right to a hearing, *Summers v. Korobkin Constr.*, 814 P.2d 1369, 1371 (Alaska 1991), the hearing need not be a full, trial-type procedure. The Board may place reasonable time limits on testimony in order to manage its own docket. Childs offers no case authority indicating that such limits violate due pro-

cess. Moreover, the Board examined Childs's offer of proof, and found that the outcome of the hearing would not have changed, even if Childs had presented all the evidence that he wished. Therefore, the Board's time restrictions do not amount to a due process violation.

## E. Attorney's Fees for CVEA's Voluntary TTD Payments

Childs argues that he should be awarded attorney's fees for his efforts in obtaining the TTD benefits that CVEA voluntarily but belatedly paid. The superior court denied these fees, saying that whether to award them was within the discretion of the Board. The court also held that because Childs was not successful in his claim, the Board properly denied attorney's fees, even as to benefits that were at first controverted but later paid.

 The Alaska Workers' Compensation Act sets up a formula for payment of minimum fees where claims have been controverted. *See* AS 23.30.145(a). Unlike attorney's fees awarded under Alaska Civil Rule 82, which are intended to provide reasonable partial compensation, attorney's fees in workers' compensation cases should be *fully* compensatory and reasonable, in order that injured workers have competent counsel available to them. *Cortay v. Silver Bay Logging*, 787 P.2d 103, 108 (Alaska 1990). Therefore, AS 23.30.145 allows the court considerably less discretion in setting fees than does Rule 82.

 Here, CVEA controverted Childs's compensation in November 1988, and Childs had to file a claim to recover these benefits. Subsequently, CVEA voluntarily paid benefits for the period from October 1988 through April 1989. CVEA's payment, though voluntary, is the equivalent of a Board award, because the efforts of Childs's counsel were instrumental to inducing it. *See State, Dep't of Highways v. Brown*, 600 P.2d 9, 12 (Alaska 1979) (hold-

---

**6.** Childs also argues that his injury amounted to a compensable disability, and that CVEA failed to show the availability of employment for a man of his skills. Because we find no error in the Board's threshold finding that Childs's condition was not work-related, we do not reach these questions.

ing that where employer apparently thought that resisting the claim any further would lead to a Board decision in the employee's favor, a voluntary payment of benefits constitutes an "award"). Therefore, the Board should have awarded Childs attorney's fees on the amount of the voluntary payment pursuant to AS 23.30.-145(a).[7]

■ In addition, CVEA delayed payment of TTD benefits that were due until August 1990. Where an employer fails to pay compensation due or resists paying compensation, AS 23.30.145(b) directs an award of reasonable attorney's fees and costs to successful claimants. Thus Childs should receive an award of reasonable fees and costs, because the efforts of his attorney were necessary to inducing CVEA to finally pay the benefits. Though CVEA asserts that it already paid the attorney's fees applicable to the delayed payment of TTD benefits, the Board should ascertain if they are reasonable pursuant to the statute.

## F. Unpaid Medical Benefits

Though Childs presented evidence that CVEA did not make promised payments for work-related medical expenses, neither the Board nor the superior court directly addressed this matter. Childs now seeks an order directing CVEA to pay these medical benefits. Though CVEA has not directly challenged Childs's evidence, the Board made no findings as to how much CVEA owes. Therefore, we remand this question to the Board for a calculation and award of the medical benefits due to Childs.

In addition, Childs seeks interest, penalties, and attorney's fees on any award of unpaid medical benefits. We shall address each of these questions separately.

7. CVEA argues that its voluntary payments were the result of reports and an examination that it, not Childs, arranged. This fact is irrelevant if this work was conducted in response to Childs's claim before the Board and Childs's attorney was instrumental in the claim's preparation.

 CVEA also argues that Childs's present counsel was not involved in the case when the reports and examination were performed. Again,

## 1. *Interest*

Childs argues that interest is due on both the unpaid medical benefits and the transportation expenses that the Board awarded Childs. The Board awarded interest on the belated payment of TTD benefits alone. In response, CVEA apparently argues that because medical benefits have no due date, an award of interest for untimely payment of these benefits would be inappropriate.

■ Medical benefits are part of a Board award of compensation for the purpose of awarding prejudgment interest. *Moretz v. O'Neill Investigations*, 783 P.2d 764, 765–66 (Alaska 1989). Interest awards are a way to recognize the time value of money, and they give "a necessary incentive to employers to release ... money due." *Id.* at 766.

■ CVEA offered to pay Childs's medical expenses for the period from October 1988 through April 1989. CVEA has not done so. Though in this case CVEA's offer of payment was voluntary, one may interpret it as the equivalent of an award, just as a voluntary payment can constitute an award for the purpose of granting attorney's fees. *See Brown*, 600 P.2d at 12. In addition, the Board expressly awarded transportation expenses. Therefore, CVEA owes interest both on the medical benefits that it offered to pay but did not and on the award of transportation costs.

## 2. *Penalties*

Childs also contends that the Board erred in failing to assess CVEA a penalty of 20 percent of the value of medical expenses owed Childs but not paid. The Board held that medical benefits were not "compensation" for the purpose of statutory penalty provisions, and the superior court agreed.

this fact is irrelevant. The attorney's fee award is to Childs, not to any particular attorney. How Childs might allocate this award is a matter for him and his attorneys to settle. *Cf. Moretz v. O'Neill Investigations*, 783 P.2d 764, 765 (Alaska 1989) (holding that whether claimant or his private insurer eventually gets prejudgment interest awarded to claimant is a matter for those two parties to resolve).

 In *Williams v. Safeway Stores,* 525 P.2d 1087 (Alaska 1974), we discussed the difficulty of defining "compensation" under the Workers' Compensation Act:

> Initially, AS 23.30.265(8) defines "compensation" for the purposes of the Act without mention of medical benefits, and [AS 23.30.265(20)] defines "medical and related benefits" in mutually exclusive language.... However, other sections of the Act ... use the word "compensation" so that the only reasonable reading of the word would include medical benefits.

*Id.* at 1089 n. 6. Although we generally construe "compensation" to include medical benefits, *see Moretz,* 783 P.2d at 766 & n. 2, we occasionally will reach the opposite result if statutory language strongly suggests a narrower reading. *See Providence Wash. Ins. Co. v. Busby,* 721 P.2d 1151 (Alaska 1986) (per curiam).

Childs's claim requires us to construe AS 23.30.155(b) and former AS 23.30.155(e): [8]

> (b) The first installment of compensation becomes due on the 14th day after the employer has knowledge of the injury or death.... Subsequent compensation shall be paid in installments, every 14 days, except where the board determines that payment in installments should be made monthly or at some other period.
>
> ....
>
> (e) If any installment of compensation payable without an award is not paid within seven days after it becomes due, as provided in (b) of this section, there shall be added to the unpaid installment an amount equal to 20 percent of it.

Interpreting similar statutory language, some jurisdictions have excluded medical benefits from "compensation," on the grounds that medical benefits are not typically paid by means of installments. *See, e.g., International Paper Co. v. Kelley,* 562 So.2d 1298, 1302 (Miss.1990).

 We implicitly rejected such a narrow reading in *Croft v. Pan Alaska Truck-*

*ing, Inc.,* 820 P.2d 1064 (Alaska 1991). At issue was the meaning of the first sentence of AS 23.30.155(j), which allows an employer to reimburse itself for overpayments of compensation by withholding up to 20 percent of amounts due from pending installments of compensation. The critical sentence was: "If an employer has made advance payments or overpayments of compensation, the employer is entitled to be reimbursed by withholding up to 20 percent out of each unpaid installment or installments of compensation due." AS 23.30.-155(j). Thus paragraph (j), like paragraph (e), uses the term "installments." Nonetheless, we concluded that an award of attorney's fees constituted "compensation." *Croft,* 820 P.2d at 1067. Although our focus in *Croft* was on the first use of "compensation" in the quoted sentence rather than on the second use, it is our view that the term has the same meaning in both its usages within this sentence.

Furthermore, interpreting "compensation" in paragraph (e) to include medical benefits serves important public policy goals. The penalty provision creates an incentive for the insurance carrier to timely pay an employee the compensation due. Otherwise, a carrier could make promises to pay medical benefits and then breach them at will, as apparently occurred here. Therefore, we hold that "compensation" under AS 23.30.155(e) includes medical benefits, and we reverse the findings of the Board and the superior court on this matter.

### 3. *Attorney's fees*

 Board should award Childs attorney's fees for whatever medical benefits CVEA owes. Like fees for the TTD benefits that CVEA paid, attorney's fees for CVEA's proffered medical benefits are appropriate to the extent that the work of counsel was necessary to elicit CVEA's concession.

---

**8.** The 1988 amendments to the Worker's Compensation Act increased the penalty to 25 per-

cent, but did not otherwise change this provision. *See* ch. 79, § 26, SLA 1988.

### G. Childs's Request for Attorney's Fees on the Full Claim

Finally, Childs argues that because he prevailed before the superior court on the question of assessing a penalty on belated TTD payments, he therefore should get full attorney's fees for his whole claim, even though he lost on most of his other issues.

■ Childs is mistaken. Alaska Appellate Rule 508(g)(2) calls for an award of "full reasonable attorney's fees ... to a successful claimant" in an administrative appeal. In order to recover fees under AS 23.30.145(b), which like Rule 508(g) directs a fee award to a "successful" claimant, the employee must succeed on the claim itself, and not a collateral issue. *Adamson v. University of Alaska*, 819 P.2d 886, 895 (Alaska 1991).

Childs lost on his main claim: his effort to win those disability and medical benefits that CVEA still controverted. Therefore, the superior court did not err in denying attorney's fees for the whole claim.

### IV. CONCLUSION

Substantial evidence supported both the Board's finding that CVEA rebutted the presumption of compensability and the Board's finding that Childs's current disability was not work-related. Though CVEA voluntarily paid some benefits, principles of equitable estoppel do not prevent it from disputing liability for the remainder. Finally, the conduct of the hearing did not deprive Childs of due process. We therefore uphold the decision of the superior court on these matters.

However, Childs is entitled to interest and a 20 percent penalty on medical expenses that CVEA volunteered to pay but did not. He is also entitled to an award of interest on the transportation expenses. We therefore reverse the decision of the superior court on these questions, and we remand the case for a determination of the amount of medical benefits owed and a calculation of the penalty and interest. Though the court properly denied him full attorney's fees on the administrative appeal, Childs is entitled to a Board award of full reasonable attorney's fees for those matters on which he · has prevailed: CVEA's payment of TTD benefits, interest payments, and the 20 percent penalty. On remand, the superior court should adjust the award of fees accordingly.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings in accordance with this opinion.