597 A.2d 1036

**UNIVERSITY OF MARYLAND MEDICAL SYSTEMS CORPORATION**

v.

**ERIE INSURANCE EXCHANGE.**

**No. 39, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Nov. 4, 1991.

Steven A. Charles (Steven A. Charles, P.A., Neil Bloom and Charles E. Chlan & Associates, on the brief), Baltimore, for appellant.

Patrick G. Cullen (Rollins, Smalkin, Richards & Mackie, on the brief), Baltimore, for appellee.

Argued before ALPERT, BLOOM and FISCHER, JJ.

BLOOM, Judge.

The sole issue presented by this appeal is whether the anti-stay provision in Maryland's Workers' Compensation Law,[1] relating to appeals to the circuit courts from decisions of the Workers' Compensation Commission, applies to Commission orders to pay previously incurred medical bills. We hold that it does not and, accordingly, we shall affirm the summary judgment granted by the Circuit Court for Caroline County (Wise, J.) in favor of appellee, Erie Insurance Exchange (Erie), in the action brought against Erie by

---

1. Maryland's Workers' Compensation Law, formerly art. 101 of the Maryland Code, was repealed and re-enacted as Title 9 of the Labor and Employment Article of the Maryland Code (1991 Repl.Vol.), by Ch. 8 of the Laws of Maryland, 1991, effective October 1, 1991. In this opinion, references are to sections of art. 101, with footnote references to comparable provisions in the Labor and Employment Article.

appellant, University of Maryland Medical Systems Corporation (UMMSC).

## Background

Arthur Thomas, while employed by Prettyman Trucking Company, Erie's insured, sustained an injury on 29 July 1982 when a loaded pallet was placed on or dropped on his right little toe. When he first sought medical treatment, a week later, he was admitted to the hospital. He later left the hospital against medical advice and remained without treatment for over 30 days. In December 1982 he was admitted to Dorchester General Hospital, where by-pass surgery was unsuccessful and gas gangrene developed in his right foot. A below-the-knee amputation of Thomas's right leg was performed later that month.

Thomas was hospitalized in Easton for a mild heart attack in October 1983. He was transferred to appellant's University Hospital and there placed in a hyperbaric chamber because gangrene had developed again in his right leg. The remainder of his right leg was amputated in November 1983. He was readmitted to University Hospital in October 1984, and his left leg was then amputated. He was discharged from therapy on 4 July 1985.

Following the July 1982 accident, Thomas applied for Workers' Compensation benefits. The Commission initially disallowed his claim, finding (1) that he had not sustained an accidental injury arising out of and in the course of his employment and (2) that the disability to his right foot was not causally related to the alleged accidental injury of July 1982. That decision was reversed on appeal, the jury finding for Thomas on both issues that had been decided against him by the Commission. Consequently, by order dated 29 August 1983 the Commission rescinded the prior decision and made findings consistent with those of the jury.

In 1985 a series of issues were presented to the Commission, and decisions favorable to the claimant were made.

There followed another appeal and a remand by virtue of a consent order that left open for further decision issues regarding causal relationship between the accidental injury of July 1982 and the subsequent disability to the claimant's heart and left leg. In December 1987 the Commission entered an order that, *inter alia,* affirmed its prior decision that Thomas's heart and left leg disabilities were caused by the July 1982 accidental injury and ordered Erie to pay medical expenses relating to the heart and both legs. In January 1988 that order was amended to specify that Erie was required to pay UMMSC bills of $33,752.70 (for the claimant's 1983 hospitalization, primarily as a result of his heart attack) and $122,528.57 for the 1984 admission (at which time his left leg was amputated). Erie appealed, and the case was submitted to Judge Wise without a jury (Case No. CV1292).

Based on the Commission's order that Erie pay its bills, UMMSC filed its own action against Erie in the Circuit Court for Caroline County, asking for a summary judgment (Case No. CV1629). Erie filed a defense. Despite the summary judgment motion, UMMSC's action remained dormant until Erie's Workers' Compensation appeal was decided. On the basis of medical testimony to the effect that Thomas's heart attack and the amputations attributable thereto resulted from a multitude of pre-existing medical conditions (obesity, diabetes, smoking, heart and artery disease), claimant's delay in seeking treatment, and his leaving the hospital against medical advice, Judge Wise reversed the Commission. He determined that the Commission had erred in finding a causal relationship between the claimant's initial injury and UMMSC's treatments and in ordering Erie to pay for those treatments. An appeal from that judgment was dismissed by this Court for failure to file an information report. Md.Rules 8–205 and 8–206(a). Thereafter, Judge Wise denied UMMSC's motion for summary judgment and granted Erie's motion for summary judgment in Case No. CV1629. He said:

As will appear by reference to the attached copy of the Memorandum Opinion and Order filed in CV1292 case on July 10, 1989, the Commissioner's Orders and awards were reversed by this Court. Plaintiff's appeal in that case was dismissed by the Court of Special Appeals and that judgment is therefore final and binding on all parties. Whether *res judicata* or collateral estoppel is applied, Defendant is entitled to summary judgment here. Plaintiff's Motion for Summary Judgment is denied this 5th day of November 1990, and defendant's Motion for Summary Judgment is GRANTED.

In this appeal from that judgment, UMMSC relies on the anti-stay provision in art. 101, § 56(a),[2] in contending that, despite the eventual determination that Erie, as Thomas's employer's compensation insurance carrier, is not responsible for the payment of UMMSC's charges for treating Thomas, Erie had to pay the bills. By virtue of that statute, UMMSC argues, Erie's appeal from the Commission's order to pay those bills did not stay that order. We disagree.

### I

Section 56 of article 101 dealt generally with appeals to circuit courts from decisions of the Commission. We would not describe subsection (a) thereof as prolix or pleonastic, but it was, to say the least, lengthy and detailed. The anti-stay provision contained therein was, by contrast, short, succinct, and concise—almost terse. It said:

> An appeal shall not be a stay of an order of the Commission directing payment of compensation or any order or supplemental order requiring the furnishing of medical treatment.

---

**2.** The appeal provisions of the Workers' Compensation Law, formerly art. 101, § 56, are now contained in §§ 9–737 through 9–740 of the Labor and Employment Article. The anti-stay provision formerly contained in § 56(a) of art. 101 now constitutes LE § 9–741 with no substantive change in language.

Appellant's contention that Erie must pay the bills, totalling $156,281.27, despite its successful appeal of the Commission's order to pay, is based upon the proposition that Erie's appeal did not stay the Commission's order. That proposition, in turn, is based upon a conclusion that the order to pay those bills for medical care that had been furnished years before was an order directing payment of compensation or, in the alternative, an order requiring the furnishing of medical treatment within the meaning of the anti-stay provision in § 56(a). We do not so interpret the statute.

There are numerous canons of statutory construction, several of which have been applied to the Workers' Compensation Law. Generally, the canon most cited and relied upon is the "plain meaning" rule: where a statute is free of ambiguity or obscurity, the words used are conclusively presumed to embody the meaning of the legislature in enacting the statute. *Board of County Commissioners of Howard County v. Fleming*, 13 Md.App. 261, 264, 282 A.2d 512 (1971). Another canon, relied upon by appellant, is that remedial legislation should be liberally construed and not, as other legislation in derogation of common law, strictly construed. Thus, Workers' Compensation laws, being remedial in nature, are to be construed liberally in favor of the workman in order to effect this benevolent purpose. *Id.* at 269, 282 A.2d 512.

Nevertheless, as pointed out in *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987), the cardinal rule of statutory construction is to effectuate the intent of the legislature. We look first, of course, to the words of the statute, "because what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal." *Id.* at 513, 525 A.2d 628.

We also recognize the rule that where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of words, but their meaning and effect in light

of the setting, the objectives and purpose of the enactment. (Citations omitted.)

*Id.,* quoting from *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986).

In order to effectuate the intent of the legislature, a court should consider the object or purpose to be attained by the statute, and the evil or mischief sought to be remedied, and so construe the statute as to carry out and effectuate, or aid in, the general purposes and policies thereof, and suppress the mischief and advance the remedy. If a statute is susceptible of more than one construction, it should, if possible, be given that construction which will effectuate or carry out its purpose or object, and it should not be given a construction that would do more than effect the legislative object or purpose.

*Johnson v. State,* 75 Md.App. 621, 630–31, 542 A.2d 429 (1988), *cert. denied,* 316 Md. 675, 561 A.2d 215 (1989) (citations omitted).

 Looking first, then, to the words of the anti-stay provision, we find that they are susceptible of more than one meaning. An employer's obligation to furnish medical treatment to the employee may be met by directly supplying medical, surgical, and nursing care, as well as prosthetic devices and a wide range of other services that have been held to be within the meaning of medical treatment, or by furnishing such treatment indirectly by paying the bills incurred by the workman in obtaining medical care.[3]

The word "compensation" itself has more than one meaning as used throughout the Workers' Compensation Law. In various places within the statute, "compensation" has the limited meaning of the payments ordered in accordance with the schedules in § 36 for permanent total disability, temporary total disability, or permanent or temporary par-

---

**3.** For examples of the wide range of goods and services deemed to be medical treatment under the Workers' Compensation Law, *see R & T Construction Company v. Judge,* 323 Md. 514, 594 A.2d 99 (1991).

tial disability,[4] as distinguished from various other benefits awardable by the Commission. In other places throughout the Workers' Compensation Law, however, the legislature used the word "compensation" in its broad sense, referring to all benefits provided in the article, which would include medical benefits as well as rehabilitation. *See Uninsured Employers' Fund v. Booker*, 13 Md.App. 591, 284 A.2d 454 (1971).

Logically, it would seem that "compensation," as used in the anti-stay provision, should be given its restrictive meaning. If "an order directing payment of compensation" were to be given a broad meaning to include an order awarding any form of benefits, the latter part of the provision, "any order or supplemental order requiring the furnishing of medical treatment" would be redundant. (The word "furnishing" has been replaced with "provision"; that is the only change in the statute.)

Nevertheless, the language of the anti-stay provision is not so clear and unambiguous as to be subject to the "plain meaning" rule. We look beyond the words themselves to the objectives and purpose of the enactment. Those objectives, the purpose of the legislature in enacting the anti-stay provision, were first explained by the Court of Appeals in *Branch v. Indemnity Insurance Co.*, 156 Md. 482, 144 A. 696 (1929). In *Branch*, the employer and insurer challenged the constitutionality of the anti-stay provision, arguing that its right of trial by jury, guaranteed by Art. 15, § 6, of the Maryland Constitution, and the prohibition of Art. 3, § 40 of the Maryland Constitution, against taking private property for public use without just compensation as agreed upon or as awarded by a jury would be seriously impaired if, by virtue of the anti-stay clause, they might be forced to pay an award before their appeal is tried and determined. The validity of the statute was upheld on the theory that since the Workmen's Compensation Law was a

---

**4.** The provisions of art. 101, § 36, with some changes, are now contained in subtitle 6 of Title 9 of LE §§ 9–601 through 9–646.

statutory remedy for which the legislature could deny any jury trial, the limitation on the right of jury trial voluntarily conferred by the legislation "is not a sustainable cause of complaint." *Id.*, at 489, 144 A. 696.

The right of the Legislature to provide that an appeal from a decision of the State Industrial Commission [5] shall not be a stay could not be denied consistently with the principle upon which the general validity of the Act has been adjudicated. Its design was to ensure speedy, as well as certain, relief in proper cases within the scope of its application. That humanitarian policy would be seriously hampered if the weekly payment of compensation could be suspended because of an appeal. In providing that an appeal should not be a stay the statute was simply adopting a necessary expedient to accomplish one of the important purposes for which it was enacted.

*Branch*, therefore, explains that the legislative purpose behind the anti-stay provision was to ensure that the weekly payments of compensation would not be suspended by virtue of an appeal. That legislative purpose was reiterated by the Court in *Bayshore Industries v. Ziats*, 229 Md. 69, 181 A.2d 652 (1962). There the claimant was found by the Commission to have sustained a temporary total disability, for which she was awarded $26.67 per week. The maximum recoverable for temporary total disability at that time was $5,000. The employer and insurer appealed on the ground that, because the parties had stipulated that only the issue of limitations would be submitted to the Commission, the award was made without their having had any opportunity to contest it. The claimant took no action to enforce the award until after the maximum amount payable had accrued, at which time she sued to recover $4,973.33 ($5,000 less the one weekly payment she had received). The Court held that, by reason of the stipulation, the claimant was estopped from recovering on the award until the appeal therefrom was determined. The Court expressly declined

---

5. The former name of the Workers' Compensation Commission.

to address the question of the appeal of the award not operating as a stay, although its ruling certainly had the effect of denying that claimant the benefit of the anti-stay provision under those circumstances. As to the purpose of that provision, the Court said:

We may note that the appellee's course of conduct [taking no action to enforce the award until the maximum amount had accrued] does not suggest that her case falls within the general policy which the prohibition against a stay by reason of an appeal has been intended to serve— that of affording day to day support of injured employees.

*Id.* at 76–77, 181 A.2d 652.

 *Branch* involved only the stay of weekly payments. *Ziats* also involved an award of weekly payments, but those weekly payments had already accrued to the maximum amount of the award before any effort was made to enforce them. In *Petillo v. Stein,* 184 Md. 644, 42 A.2d 675 (1945), the Commission had commuted most of an award of $18 per week for 212 weeks, totalling $3,816, to four lump-sum payments discounted at 3 percent. The Court held that the anti-stay provision, not being qualified by the statute, applied to all appeals, including those from converted or commuted awards. The question of an appeal operating as a stay when an award of compensation under § 36 was commuted to a lump-sum payment later arose again in *Montgomery County v. Lake,* 68 Md.App. 269, 511 A.2d 541 (1986). Reiterating that the purpose for prohibiting an appeal from an award of compensation to act as a stay of that award is that of affording day-to-day support to an injured employee or his or her dependents, *Lake* furnishes an explanation for the applicability of the anti-stay provision even to commuted lump-sum awards. Art. 101, § 49,[6] gives the Commission authority to convert an award of compensation into a partial or total lump sum if the facts and circumstances of the case warrant it. Case law has

---

6. LE § 9–729.

established that the policy of the statute does not favor lump-sum awards, which should be the exception rather than the rule. The Commission's discretion to commute or convert awards of weekly compensation into lump-sum awards should be exercised only when necessary for the proper care of injured workers and their dependents, and may not be allowed merely to pay debts owed by claimants. They are not granted for purposes unrelated to the necessary living or business needs of the claimant. Because lump-sum payments, as well as weekly sums, are intended to meet essential expenses, they are governed by the same principles—they are not stayed by an appeal from the award, and, by virtue of *St. Paul Fire & Marine Ins. Co. v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971), the employer and insurer are prohibited from recovering overpaid benefits.

Since the purpose of the anti-stay provision in § 56 is to prevent a cessation of the weekly compensation benefits and ongoing medical care that are necessary for a claimant's survival and well-being while an appeal is pending, we decline to interpret that statutory provision more broadly than is necessary to accomplish that purpose, *see Pennsylvania Railroad Co. v. Lord,* 159 Md. 518, 528, 151 A. 400 (1930), particularly in view of the fact that the employer or insurer is precluded from recovering overpayments if successful on appeal. *St. Paul Fire & Marine Ins. Co., supra,* 263 Md. at 439, 283 A.2d 601.

To adopt appellant's theory would give a meaning to the anti-stay provision that is much broader than its purpose and one that is certainly not required by its language. If, as the Court of Appeals has stated, the legislative intent behind this statutory provision was to prevent a cessation of benefits that meet an injured worker's daily needs, the proper interpretation of "an order of the Commission directing payment of compensation" is an order awarding weekly compensation for disability and not any award of benefits. And "any order or supplemental order requiring the furnishing of medical treatment," given the ordinary meaning

of those words, consistent with the purpose of the provision, means an order, pursuant to former art. 101, § 37,[7] or a supplemental order pursuant to former § 56(a),[8] providing for ongoing medical treatment pending the appeal. Payment of medical bills incurred for treatment rendered in the past, irrespective of the outcome of an appeal to determine the employer's or insurer's responsibility therefor, is not necessary for the injured worker's survival or well-being during the appeal process.

## II

UMMSC asserts that the circuit court erred in granting summary judgment on the basis of the doctrine of *res judicata*, since the issue of whether the bills were payable notwithstanding the appeal had not been decided. We decline the invitation to address and analyze that issue. It is irrelevant to our decision. The only basis for UMMSC's claim against Erie was the Commission's decision. Erie was entitled to a judgment on that claim as a matter of law because (1) the circuit court had reversed the Commission, deciding that Erie was not responsible for the UMMSC bills and (2) we have held that the anti-stay provision in § 56(a) did not require Erie to pay bills irrespective of the result of the Workers' Compensation appeal. Even assuming that the court's reason for the summary judgment was wrong, we must still affirm the judgment.

> It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should be based on another ground.

*Securities and Exchange Comm. v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). "In other words, a trial court's decision may be correct although for a different reason than that relied on by that court." *Robe-*

---

7. LE § 9–660, *et seq.*

8. LE § 9–742.

*son v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.