*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MUNICIPALITY OF ANCHORAGE and NOVAPRO RISK SOLUTIONS, Adjuster, | ) ) ) ) | Supreme Court Nos. S-14621/14622 (Consolidated) |
| Petitioners, | ) ) | Alaska Workers' Compensation Appeals Commission No. 11-017 |
| v. | ) ) | |
| | ) | O P I N I O N |
| JOHN E. ADAMSON, | ) ) | No. 6780 - May 3, 2013 |
| Respondent. | ) ) ) | |
| CALLI E. OLSEN, | ) ) ) | |
| Petitioner, | ) ) | Alaska Workers' Compensation Appeals Commission No. 12-001 |
| v. | ) ) | |
| CITY & BOROUGH OF JUNEAU, | ) ) ) | |
| Respondent. | ) ) ) | |

Petition for Review in File No. S-14621 from the Alaska Workers' Compensation Appeals Commission, Rebecca C. Pauli, Chair pro tem. Petition for Review in File No. S-14622 from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Chair.

Appearances: Trena L. Heikes, Assistant Municipal Attorney, and Denise A. Wheeler, Municipal Attorney, Anchorage, for Petitioners Municipality of Anchorage and NovaPro Risk Solutions. Eric Croft, The Croft Law Office, Anchorage, for Respondent Adamson. Joseph A. Kalamarides, Kalamarides & Lambert, Anchorage, for Petitioner Olsen. Richard L. Wagg, Russell, Wagg, Gabbert & Budzinski, P.C., Anchorage, for Respondent City and Borough of Juneau.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices. [Maassen, Justice, not participating.]

CARPENETI, Justice.

## I. INTRODUCTION

What standard should apply to stays on appeal of future medical benefits when the Alaska Workers' Compensation Board has ordered an employer to pay for medical treatment or benefits? In these two cases the Alaska Workers' Compensation Appeals Commission applied different standards to evaluate motions to stay future medical benefits, and the losing party in each case petitioned for review of the Commission's stay decision. We granted review to decide what standard applies to stays of future medical benefits. We hold that to stay future medical benefits, the employer must show the existence of the probability that the appeal will be decided adversely to the compensation recipient.

## II. FACTS AND PROCEEDINGS

### A. *Municipality of Anchorage v. Adamson*

John Adamson worked as a firefighter for the Municipality of Anchorage for more than 20 years, retiring in 2011. He was diagnosed with prostate cancer on August 7, 2008, and applied for workers' compensation benefits for the cancer. Adamson's application was based on AS 23.30.121, which establishes a special

presumption analysis in workers' compensation cases for firefighters who develop certain cancers; the statute became effective on August 19, 2008.  The Municipality raised a number of procedural defenses to Adamson's claim as well as a constitutional challenge to the firefighter presumption statute.

After a hearing the Alaska Workers' Compensation Board decided that Adamson's cancer was compensable and ordered the Municipality to pay past and future medical benefits, some past temporary total disability (TTD) benefits, and costs and attorney's fees.  The Board did not consider whether Adamson was eligible for permanent partial impairment (PPI) at that time because Adamson had neither been evaluated nor included a claim for it.[1]  One Board member dissented and would have found the claim not compensable.

The Municipality appealed the decision to the Alaska Workers' Compensation Appeals Commission and asked for a stay of the Board's decision.  The Municipality explained that "future periodic medical expenses [might] be incurred" while the appeal was pending, and argued that these benefits should be stayed under the probability of success on the merits standard.  Adamson agreed to stay past benefits, but he did not want to stay future medical benefits, including a biannual examination.  He argued that he, not the Municipality, would likely prevail on the merits.

The Commission refused to stay future benefits.  It found that the Municipality would suffer "irreparable harm" because it would have no way to recoup benefits paid if it prevailed on appeal.  And the Commission further decided that the Municipality had raised serious and substantial questions going to the merits of the case.  But the Commission refused to stay future benefits because the Municipality had not

---

[1]     At oral argument before us, the Municipality said that Adamson has since received an award of PPI.  The Municipality did not say whether it had appealed this decision or asked the Commission for a stay of PPI awarded by the Board.

shown that "it [was] more likely than not that the [Municipality would] prevail on the merits." The Commission cited AS 23.30.125(c) as the source of law for the stay standard. The Municipality petitioned for review of the denial of the stay.

B.    *Olsen v. City & Borough of Juneau*

Calli Olsen worked as a wastewater utility operator for the City and Borough of Juneau (CBJ). According to the Board's decision in her case, she filed reports of injury for two different injuries, one to her right knee in May 2009 and one to her lower back and right leg in September 2009. After a hearing the Board found that her knee injury, but not her back and leg injury, was compensable, and it ordered CBJ to pay for completion of a specific medical treatment (autologous chondrocyte implantation) as well as past medical care related to the right knee.[2] The Board denied other claims she made and deferred ruling on PPI because she was not yet medically stable.

CBJ appealed to the Commission and asked for a stay of future medical benefits. CBJ's motion for stay argued that it was probable that the merits of the appeal would be decided adversely to Olsen. CBJ contended that because Olsen's claim was an aggravation claim and because the statutory standard had changed from "a substantial factor" to "the substantial cause," the Board had evaluated the claim using the incorrect standard. Olsen countered that the Board had properly evaluated the claim. In an affidavit filed with her opposition, Olsen stated that she had undergone the first part of

---

[2]    Autologous chondrocyte implantation is a two-part medical procedure in which a small amount of cartilage is first removed from the knee in an arthroscopic procedure. The tissue is sent to a lab, which grows more of the patient's cells. The lab initially freezes the tissue and does not begin the culturing process until after "all the paperwork for insurance has been done." After growing a sufficient number of cells, the lab ships them back for implantation in the patient. The second surgery is an open procedure in which the cells are placed under a membrane patch. According to Olsen's surgeon, the procedure is generally successful and avoids the need for knee replacement surgery. Olsen had completed the first part of the procedure before the Board hearing.

the implantation procedure in June 2010 and had no funds to pay for the second surgery; she further stated that she was "not able to find suitable work in [her] field due to [her] injury."[3]

At the hearing on the stay, the Commission directed the parties to address which regulatory standard for a stay applied. At the time of the hearing, the Commission's regulation about stays on appeal contained two standards depending on the type of benefit at issue. To stay "continuing future periodic compensation payments" the appellant was required to demonstrate irreparable damage and "the existence of the probability that the merits of the appeal [would] be decided adversely to the compensation recipient"; for "lump-sum payments" the appellant had to show irreparable damage and "the existence of serious and substantial questions going to the merits of the case."[4]

CBJ said it would suffer irreparable damage without the stay because it would have no way to recoup the payments if it were to win on appeal. CBJ argued that the benefits at issue were not continuing future periodic compensation payments, so the serious and substantial question standard should apply. Olsen argued that CBJ was required to show a probability of success on the merits; she told the Commission that no case had expressly decided whether future medical benefits were "continuing future periodic compensation payments."

The Commission granted the stay, using the serious and substantial question test to evaluate the request. The Commission found that CBJ had no way of recovering payment for the medical treatment if CBJ won the appeal, and it decided that CBJ had

---

[3]     Olsen was still working for CBJ at the time of the first surgery, but the workers' compensation carrier did not pay for it. Her employment with CBJ ended in July 2010.

[4]     8 Alaska Administrative Code (AAC) 57.100(d)-(e) (am. 3/24/12).

raised a serious and substantial question, specifically how "the statutory standard for compensability . . . requiring that employment be the substantial cause of the need for medical treatment . . . appl[ied] in the context of [Olsen's] case." The Commission did not consider whether CBJ had shown the existence of the probability the merits of the appeal would be decided adversely to Olsen.

Olsen then moved for reconsideration, arguing that the probability of success on the merits was the appropriate standard. She further contended that medical benefits could not be stayed at all if the Commission interpreted "compensation" as excluding medical benefits. The Commission responded to Olsen's motion by explaining that it interpreted AS 23.30.125(c) as "restating the criterion in *Olsen* [*Logging Co. v. Lawson*[5]] for stays of ongoing periodic disability payments on which an employee relies as a salary substitute." The Commission also quoted the standard for lump sum payments from *Olsen Logging* and said that whether Olsen's implantation procedure

> would be paid incrementally or [as] a lump sum was not the critical consideration . . . . The compensation is clearly not ongoing periodic disability payments on which Olsen would rely as a salary substitute. . . . [T]he compensation, in terms of the language in AS 23.30.125(c), is not continuing future periodic compensation payments.

Olsen petitioned for review of the stay decision.

We granted review of both petitions and consolidated the cases for oral argument and decision.

## III.   STANDARD OF REVIEW

We interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its

---

purpose."[6] When interpreting a statute, "we adopt 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[7] We apply our independent judgment to questions of law that do not involve agency expertise.[8] If the issue involves agency expertise or fundamental policy questions, we apply the reasonable basis standard of review and "defer to the agency if its interpretation is reasonable."[9] But when the issue is one of "statutory interpretation requiring the application and analysis of various canons of statutory construction," as it is here, we apply our independent judgment.[10]

## IV. DISCUSSION

**Future Periodic Compensation Payments Can Include Medical Benefits.**

### A. The Language Of AS 23.30.125(c)

These two petitions require us to construe AS 23.30.125(c), which the legislature repealed and reenacted in 2005 as part of the legislation creating the

---

[6]    *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

[7]    *Lewis-Walunga v. Municipality of Anchorage*, 249 P.3d 1063, 1067 (Alaska 2011) (quoting *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1133 (Alaska 2009)).

[8]    *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (quoting *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

[9]    *DeNuptiis v. Unocal Corp.*, 63 P.3d 272, 277 (Alaska 2003) (citing *O'Callaghan v. Rue*, 996 P.2d 88, 94 (Alaska 2000); *Lakosh v. Alaska Dep't of Envtl. Conservation*, 49 P.3d 1111 (Alaska 2002)).

[10]    *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903-04 (Alaska 1987); *see also Alaska Pub. Offices Comm'n v. Stevens*, 205 P.3d 321, 324 (Alaska 2009) ("When reviewing an agency decision involving statutory interpretation and determination of legislative intent, we apply the substitution of judgment standard.").

Commission.[11] The statute currently provides, in pertinent part:

> The payment of the amounts required by an award may not be stayed pending a final decision in the proceeding unless, upon application for a stay, the commission, on hearing, after not less than three days' notice to the parties in interest, allows the stay of payment, in whole or in part, where the party filing the application would otherwise suffer irreparable damage. Continuing future periodic compensation payments may not be stayed without a showing by the appellant of irreparable damage and the existence of the probability of the merits of the appeal being decided adversely to the recipient of the compensation payments. The order of the commission allowing a stay must contain a specific finding, based upon evidence submitted to the commission and identified by reference to the evidence, that irreparable damage would result to the party applying for a stay and specifying the nature of the damage.

Among the changes the legislature made to AS 23.30.125(c) in 2005 was the addition of the second sentence in the text quoted above: "Continuing future periodic compensation payments may not be stayed without a showing by the appellant of irreparable damage and the existence of the probability of the merits of the appeal being decided adversely to the recipient of the compensation payments."[12] This sentence is

---

[11] Ch. 10, § 40, FSSLA 2005.

[12] Former AS 23.30.125(c) (1990) provided:

> The payment of the amounts required by an award may not be stayed pending final decision in the proceeding unless upon application for an interlocutory injunction the court on hearing, after not less than three days' notice to the parties in interest and the board, allows the stay of payment, in whole on in part, where irreparable damage would otherwise ensue to the employer. The order of the court allowing a stay shall contain a specific finding, based upon evidence submitted to

(continued...)

similar, but not identical, to language in *Olsen Logging Co. v. Lawson*, where we interpreted former AS 23.30.125(c) as incorporating the balance of hardships standard used in preliminary injunctions.[13]  In *Olsen Logging* we looked at the balance of hardships to employers and employees in stays of disability benefits and decided that the balance of hardships "would almost invariably result in application of the 'probability of success on the merits' standard when the award consists of ongoing periodic disability payments on which an employee relies as a salary substitute."[14]  In contrast, we decided that "the lesser 'serious and substantial questions' standard [should] be used where a lump sum award is sought to be stayed" because an  employer will often have limited or nonexistent means to recover the money paid if it wins the appeal and the employee is "usually not dependent on lump sum awards for his daily living expenses."[15]  Our decision in *Olsen Logging* established a two-tier system for evaluating stays of disability benefits in workers' compensation cases, but it did not consider medical benefits.  Before the legislature amended AS 23.30.125, we had not been presented with the question of which standard applied to stays of awards of future medical benefits.

---

[12]    (...continued)
the court and identified by reference to it, that irreparable damage would result to the employer, and specifying the nature of the damage.

[13]    832 P.2d 174, 175-76 (Alaska 1992).

[14]    *Id*. at 176.

[15]    *Id*.

## B.    The Commission's Interpretation Of AS 23.30.125(c)

In the time since AS 23.30.125(c) was amended, the Commission has interpreted the statute in a number of ways.[16] For purposes of evaluating stays of future medical benefits, the Commission has at times engaged in a detailed weighing of the balance of hardships to the parties, looking at a number of factors before deciding the issue.[17] In Adamson's case, there was apparently no dispute before the Commission that the probability of success on the merits was the applicable standard. In Olsen's case, the Commission interpreted the legislature's addition of the sentence about continuing future periodic compensation payments as signaling a legislative intent to apply the probability of success on the merits only to ongoing disability payments that the employee used as a salary substitute. In arriving at this decision, the Commission did not examine the meaning of the words contained in the phrase "continuing future periodic compensation payments" and did not discuss the legislative history or purpose of the statute. Instead, it interpreted the phrase "as restating the criterion in *Olsen* [*Logging*] for stays of ongoing periodic disability payments on which an employee relies as a salary substitute." Because the Commission did not consider medical benefits to be "ongoing periodic disability payments on which Olsen would rely as a salary substitute," it decided that the medical benefits, "in terms of the language in AS 23.30.125(c), [were] not continuing future periodic compensation payments."

---

**16**      In addition to the decisions it has made about stays, it has promulgated a regulation about stays, which it has modified several times. The most recent change in the regulation became effective in March 2012, after these cases were decided. 8 AAC 57.100, am. 3/24/12, Register 201.

**17**      *See Anchorage Sch. Dist. v. Delkettie*, AWCAC Dec. No. 022 at 9 (Oct. 19, 2006) (refusing to stay payment of future medication copayments because employer could recover money); *S&W Radiator Shop v. Flynn*, AWCAC Decision No. 005 at 5 (Feb. 24, 2006) (evaluating balance of hardships using factors including delay in treatment and ability of employer to recover payment).

### C. "Continuing Future Periodic Compensation Payments"

Central to resolution of these cases, then, is the meaning of the phrase "continuing future periodic compensation payments."[18] "We interpret statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[19] Words in statutes are construed using their common meanings unless they have "acquired a peculiar meaning, by virtue of statutory definition or judicial construction."[20]

Of the words in the phrase "continuing future periodic compensation payments," only "compensation" is defined in the workers' compensation act.[21] We have also interpreted the term "compensation" to include medical benefits in most instances; as we stated in *Childs v. Copper Valley Electric Ass'n*, we "generally construe 'compensation' to include medical benefits, [but] we occasionally will reach the opposite result if statutory language strongly suggests a narrower reading."[22] The Commission acknowledged that medical benefits are compensation when it said that the Board "awarded Olsen compensation in the form of future medical benefits." No party disputes that the medical benefits awarded in these cases are "compensation" for purposes of a

---

[18] The parties raised and discussed the additional issue of whether the legislature intended to alter the two-tier analysis in *Olsen Logging*, particularly the standard for stays of lump-sum awards, through the addition of the sentence about stays of continuing future periodic compensation payments. Because *Olsen Logging* did not address medical benefits, we do not need to decide this issue.

[19] *Pestrikoff v. Hoff*, 278 P.3d 281, 283 (Alaska 2012) (citing *In re Estate of Maldonado*, 117 P.3d 720, 725 (Alaska 2005)).

[20] *State v. Jeffery*, 170 P.3d 226, 232 (Alaska 2007) (quoting *Div. of Elections v. Johnstone*, 669 P.2d 537, 539 (Alaska 1983)) (internal quotation marks omitted).

[21] AS 23.30.395(12).

[22] 860 P.2d 1184, 1192 (Alaska 1993) (citations omitted).

stay, and nothing in the statutory language suggests that the legislature intended to treat medical benefits differently from other compensation in this statutory subsection.[23] Subsection .125(c) permits the Commission to set aside a "compensation order," which is a Board order deciding a workers' compensation claim.[24] Because a claim can include a request for medical benefits, a compensation order can also include medical benefits, as these two cases illustrate. As a result "compensation" in "continuing future periodic compensation payments" includes medical benefits.[25]

The parties here dispute the meaning of "continuing" and "periodic." The Municipality argues that medical benefits do not fit the definition of "continuing." Adamson responds that payments for his examinations are unquestionably continuing. The Municipality's argument that medical benefits are not continuing is based on the idea that each separate doctor visit or procedure is a discrete event that renews the employer's obligation; it does not consider a course of medical treatment that may extend over a long period of time and encompass a number of visits.

"Continue" has several meanings:

1. To go on with a particular action or in a particular condition: PERSIST. 2. To exist over an extended period:

---

[23] The legislature used the phrase "continuing future periodic compensation payments" rather than "ongoing periodic disability payments," as we did in *Olsen Logging Co. v. Lawson*, 832 P.2d 174, 176 (Alaska 1992).

[24] AS 23.30.110(e).

[25] *See Jonathan v. Doyon Drilling, Inc.*, 890 P.2d 1121, 1123 (Alaska 1995) ("There is a presumption that the same words used twice in the same act have the same meaning." (quoting *Kulawik v. ERA Jet Alaska*, 820 P.2d 627, 634 (Alaska 1991)) (internal quotation marks omitted)).

LAST.  3.  To remain in the same state, capacity, or place.  4. To go on after an interruption: RESUME.[26]

*Black's Law Dictionary* has two definitions of "continuing," both of which are similar to general usage: "1. Uninterrupted; persisting <a continuing offense>. 2. Not requiring renewal; enduring <continuing stockholders> <continuing jurisdiction>."[27] The medical benefits at issue in both of these cases fall within a definition of "continuing."  The treatment the Board ordered for Olsen would have completed (or gone on with) the first procedure.  Adamson's medical care will persist over an extended period of time.  Medical benefits generally meet the definition of "continuing":  An employer may be required to provide medical benefits over an extended period of time to ensure that the worker completes the process of recovery.[28]

We turn now to the meaning of "periodic payment." The Municipality contends that the definition of the term "periodic payment" shows that medical benefits are not "periodic compensation payments."  "Periodic payment" is defined as "[o]ne of a series of payments made over time instead of a one-time payment for the full amount"; it is contrasted with "lump-sum payment," which is defined as "[a] payment of a large amount all at once, as opposed to a series of smaller payments over time."[29]  The Municipality asserts that "medical benefits are paid as a 'one time payment for the full amount' due and are incurred on an intermittent, irregular basis."  But this depends on how one views medical benefits.  Each doctor visit or procedure may be paid in full when the bill is presented, but an employer is responsible, at least initially, for the full course

---

[26]     WEBSTER'S II NEW COLLEGE DICTIONARY 250 (3d ed. 2005).

[27]     BLACK'S LAW DICTIONARY 363-64 (9th ed. 2009).

[28]     *See* AS 23.30.095(a) (requiring employer to provide medical treatment for up to two years depending on nature of injury).

[29]     BLACK'S LAW DICTIONARY 1244 (9th ed. 2009).

of medical treatment the worker needs to recover from injury.[30] Payment for the course of treatment is not usually made as a lump sum, particularly when a worker must see specialists on referral to receive appropriate treatment.

The parties here focus their arguments on the meaning of "periodic." CBJ and the Municipality rely on a definition of "periodic" that is limited to regular intervals. Adamson counters that "periodic" can also mean "recurring intermittently." "Periodic" has several dictionary meanings, two of which are relevant here: "Occurring or appearing at regular intervals" and "[t]aking place now and then: INTERMITTENT <*periodic* mood swings>."[31] Because either meaning is plausible, we conclude that the statute is ambiguous.

### D. Legislative Purpose And History

When statutory language is ambiguous, we look to the purpose of the legislation and the legislative history for indications of legislative intent.[32] Legislative intent does not clarify how the phrase "continuing future periodic compensation payments" should be interpreted. The legislature intended that the workers' compensation statute "be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to [it]."[33] Interpreting "continuing future periodic compensation payments" to include future medical benefits is consistent with ensuring

---

[30]   AS 23.30.095(a).

[31]   WEBSTER'S II NEW COLLEGE DICTIONARY 838 (3d ed. 2005).

[32]   *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003).

[33]   AS 23.30.001(1).

the quick and predictable delivery of benefits to injured workers, but it could be costly to employers because of their limited means to recover payments if they win on appeal.[34]

There is very little legislative history specifically about the stay standard. As Adamson points out, the amendment to AS 23.30.125(c) was part of a package of amendments related to creation of the Commission. The only versions of the bill that amended AS 23.30.125(c) were those versions that included establishment of the Commission.[35] The governor, who sponsored the legislation, indicated in his transmittal letter that one reason he proposed the bill was to "address medical costs" in the workers' compensation system by reviewing the system and proposing solutions.[36] But the letter did not suggest a desire to change the process for appealing a Board decision beyond creating a commission whose decisions would be precedential and speedy.[37]

The parties only mention one specific reference to the stay standard in the legislative history: The Department of Law, comparing versions of the bill for the Free Conference Committee, said the amendment to AS 23.30.125 "[p]ermits [the] commission to issue a stay, but continuing future payments may not be stayed without a showing by the appellant of irreparable harm and the existence of the probability of the merits being decided adversely to the compensation recipient. (current case law standard)." This small piece of legislative history does not illuminate whether the

---

[34]     *See Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066-67 (Alaska 1991) (holding that AS 23.30.155(j) is exclusive means to recover overpayments of compensation).

[35]     *Compare* S.B. 130, C.S.S.B. 130(FIN) am, C.C.S. S.B. 130, C.C.S. S.B. 130 (fld H), F.C.C.S. S.B. 130, *and* F.C.C.S. S.B. 130 (efd pfld H), *with* C.S.S.B. 130(L&C), C.S.S.B. 130(JUD), C.S.S.B. 130(FIN), H.C.S. C.S.S.B. 130(L&C), H.C.S. C.S.S.B. 130(JUD) *and* H.C.S. C.S.S.B. 130(JUD) am H.

[36]     2005 Senate Journal 466.

[37]     *Id.* at 465-68.

legislature intended "continuing future periodic compensation payments" to include future medical benefits because there was no case law standard for future medical benefits.

### E.    Precedent, Reason, And Policy

Because AS 23.30.125(c) is ambiguous and because of the paucity of legislative history, we construe "continuing future periodic compensation payments" "so as to adopt [the] rule of law that is most persuasive in light of precedent, reason, and policy."[38]  Although we agree with the Municipality that "pertinent court decisions may be consulted in the interpretation of statutes which restate decisional law," we disagree with the Municipality's analysis of how the legislation should be interpreted in light of our prior decisions.  The Municipality, like the Commission, interprets the legislature's use of language similar to *Olsen Logging* as limiting the probability of success on the merits standard to stays of disability benefits on which the employee relies as a salary substitute.  But the legislature did not restrict this standard to disability payments when it rewrote AS 23.30.125(c).

Our decision in *Childs v. Copper Valley Electric Ass'n* supports interpreting "continuing future periodic compensation payments" to include future medical benefits that the Board has awarded.[39]  In *Childs* we construed a part of the statute that refers to "installment[s] of compensation" as including medical benefits.[40]  We held there that "compensation" in AS 23.30.155(e) included medical benefits; at the time subsection .155(e) provided that "[i]f any installment of compensation payable without an award is

---

[38]    *State v. Pub. Safety Emps. Ass'n*, 93 P.3d 409, 416 (Alaska 2004) (quoting *Pub. Safety Emps. Ass'n v. State*, 799 P.2d 315, 319 (Alaska 1990)) (internal quotation marks omitted).

[39]    860 P.2d 1184 (Alaska 1993).

[40]    *Id.* at 1192.

not paid within seven days after it becomes due, . . . there shall be added to the unpaid installment an amount equal to 20 percent of it."[41] We rejected the view from states "exclud[ing] medical benefits from 'compensation,' on the grounds that medical benefits are not typically paid by means of installments."[42] "Installment" is defined as "[a] periodic partial payment of a debt."[43] In addition, AS 23.30.155(a) also uses the word "periodic," providing that "[c]ompensation under this chapter shall be paid periodically, promptly, and directly to the person entitled to it, without an award, except where liability to pay compensation is controverted by the employer."

Other states consider future medical compensation payments to be like other ongoing compensation payments. In construing its workers' compensation statute, the Maine Supreme Judicial Court held that an employer was required to pay ongoing medical benefits while an appeal was pending even if the employer had no way to recover the benefits if it were successful on appeal.[44] The Maryland Court of Special Appeals, in a case concerning payment of past medical benefits, indicated that ongoing medical benefits should be treated like other ongoing benefits: The court said the purpose of the anti-stay provision of its workers' compensation statute was "to prevent a cessation of the weekly compensation benefits and ongoing medical care that are necessary for a claimant's survival and well-being while an appeal is pending."[45]

---

[41] *Id.* The legislature amended subsection (e) in 1988 to increase the penalty award to 25 percent. *Id.* at 1192 n.8.

[42] *Id.* at 1192 (citing *Int'l Paper Co. v. Kelley*, 562 So. 2d 1298, 1302 (Miss. 1990)).

[43] BLACK'S LAW DICTIONARY 868 (9th ed. 2009).

[44] *Ryerson v. Pratt & Whitney Aircraft*, 495 A.2d 808, 811-12 (Me. 1985).

[45] *Univ. of Maryland Med. Sys. Corp. v. Erie Ins. Exch.*, 597 A.2d 1036, 1041 (Md. App. 1991).

There are policy arguments on both sides of this issue. Medical treatments can be expensive, and the Municipality points to a report by the Division of Workers' Compensation showing that medical costs account for about three-fourths of workers' compensation costs in Alaska.[46] Because the probability of success on the merits is a high threshold, and because the employer cannot recover overpaid benefits in all cases, there are reasons to be cautious about construing "continuing future periodic compensation payments" to include all medical benefits. On the other hand there are also good reasons to treat medical care, especially medical care sought in the first two years following an injury,[47] as similar to "periodic disability payments on which an employee relies as a salary substitute."[48] Both Adamson and Olsen discuss the necessity of medical care to an injured worker, and Olsen's case illustrates the difficulty an employee can face if she has no other health insurance and cannot otherwise pay for a needed procedure.[49] In addition, when an employee cannot get medical treatment, she can face a prolonged period of unemployment or underemployment, and her condition may worsen while she

---

[46]    It is not clear from the report whether the medical costs include evaluations like second independent medical evaluations as well as direct care for injured workers.

[47]    *See* AS 23.30.095(a) (requiring the employer to provide medical care as needed for recovery for time period not to exceed two years).

[48]    *Olsen Logging Co. v. Lawson*, 832 P.2d 174, 176 (Alaska 1992).

[49]    The difficulty she faces in completing treatment undermines the Municipality's assertion that injured workers still have access to reasonable and necessary medical treatment, even when their Board-ordered treatment has been stayed. Olsen's doctor testified that the lab does not begin to grow cells for future implantation until "all the paperwork for insurance is done."

waits for the appeal. Delaying treatment can also delay the date of medical stability,[50] which delays an assessment of any permanent impairment.[51]

In discussing the balance of hardships approach in *Olsen Logging*, we said that "[w]here the injury which will result from . . . the preliminary injunction is not inconsiderable and may not be adequately indemnified by a bond, a showing of probable success on the merits is required."[52] In many cases involving medical care, that standard is met. A bond may ensure payment of the cost of treatment at a later date, but an injured worker who has to delay treatment while an appeal is pending is not able to recover anything for continuing pain and may have a reduced income for a considerable period of time while waiting for medical care. Moreover, when the Commission is considering a request to stay future medical benefits, the Board has already conducted a hearing, evaluated the evidence, and determined compensability. In other words, when an employer seeks a stay of future medical benefits, "the employer has just lost on the merits in a competent forum."[53]

*Olsen Logging* essentially set up a system in which the balance of hardships was determined in advance. If the stay involved ongoing benefits that an injured worker would use as a salary substitute, then the balance of hardships tipped in favor of the injured worker; on the other hand, when the issue involved a lump sum, the balance of

---

[50] *See* AS 23.30.395(27) (defining medical stability).

[51] *See* AS 23.30.185 (providing that TTD cannot be paid after medical stability).

[52] 832 P.2d at 176 (quoting *State v. United Cook Inlet Drift Ass'n*, 815 P.2d 378, 379 (Alaska 1991)).

[53] *See* 8 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 130.08[4] (2012) (discussing legal standards for stays on appeal of workers' compensation benefits).

hardships favored the employer. We recognize that medical benefits are different from disability payments in that they are not fixed — there is substantial variation in the type of treatment an employee seeks as well as the cost and effectiveness of treatment. But they are more like disability payments that an employee relies on as a salary substitute than lump sums; like benefits an employee needs as a salary substitute, the hope of future medical treatment "is a meager substitute" for needed care.[54]

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the Commission's order in *Municipality of Anchorage v. Adamson*. We VACATE the Commission's order in *Olsen v. City & Borough of Juneau* and REMAND to the Commission for further proceedings consistent with this opinion.

---

[54]    *Olsen Logging Co.*, 832 P.2d at 176.